[Cite as *State v. Greene*, 2012-Ohio-5624.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : | William B. Hoffman, P.J. |
|  | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2012 AP 02 0018 |
|  | : |  |
|  | : |  |
| COREY GREENE | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |


CHARACTER OF PROCEEDING:                    Criminal Appeal from Tuscarawas
                                                                        County Court of Common Pleas Case
                                                                        No. 2011 CR 07 0196

JUDGMENT:                                                  Reversed and Remanded

DATE OF JUDGMENT ENTRY:                    November 29, 2012

APPEARANCES:

For Plaintiff-Appellee                                  For Defendant-Appellant

RYAN STYER                                             RODNEY A. BACA
Tuscarawas County Prosecutor                 Schnars, Baca & Infantino, LLC
125 East High Avenue                              610 Market Avenue North
New Philadelphia, Ohio  44663                 Canton, Ohio  44702

*Edwards, J.*

{¶1} Defendant-appellant, Corey Greene, appeals his conviction and sentence from the Tuscarawas County Court of Common Pleas on one count of aggravated possession of drugs. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On July 22, 2011, the Tuscarawas Count Grand Jury indicted appellant on one count of aggravated possession of drugs (Oxycodone) in violation of R.C. 2925.11(A) and (C)(1)(c), a felony of the second degree. At his arraignment on October 7, 2011, appellant entered a plea of not guilty to the charge.

{¶3} Subsequently, a jury trial commenced on February 7, 2012. The following testimony was adduced at trial.

{¶4} On March 9, 2011, Dal Frais, Bobbi Scarborough and appellant were in a rental car that was stopped for speeding. While Frais, who has prior felony convictions including one involving marijuana, was in the front passenger seat, Scarborough was driving and appellant was in the back seat behind Frais. Frais, who is friends with Scarborough, testified that he was going to drop her off at her home in Columbia, South Carolina after she had visited with him for a couple of days in Toledo. Frais testified that because he had no license, a friend, Brittany Brown, rented the rental car for him. Brown, Frais and Scarborough all went together to rent the car.

{¶5} According to Frais, appellant asked if he could catch a ride with them and be dropped off in West Virginia so that he could meet with one of his friends. Frais testified that appellant had gone to West Virginia on numerous times and came back bragging about how much money he had made and flaunting jewelry. Frais testified that

appellant had shown him blue pills, which were Percocets, while they were hanging out in Toledo and indicated that that was how he made his money. According to Frais, he did not pay appellant to go to West Virginia. Appellant paid for the gas.

{¶6}   Frais testified that appellant had a chance to be in the car by himself when he got into the front seat to program the navigation system during a stop for gas and then, after they stopped at another gas station, when appellant checked on or installed a fuse.

{¶7}   Frais also testified that Trooper Beach, after stopping the rental car, asked them to step out of the car so that he could search them because he smelled marijuana. According to Frais, at the time no marijuana was being burned. Frais testified that he had smoked one or two blunts (marijuana) with appellant earlier. The following testimony was adduced when Frais was asked when it was first indicated that there were pills tucked up under the dash:

{¶8}   "MR. FRAIS: When the officer put me and Corey in the car together.

{¶9}   "MR. STYER: Uh huh.

{¶10} "MR. FRAIS: That's when I initially knew something was wrong because he was mumbling and I heard him mumble, 'I hope my tuck spot is good.'

{¶11} "MR. STYER: Okay.  Did you know what he meant by that?

{¶12} "MR. FRAIS: Right when he said that then I knew that he had, when you say tuck spot that mean he had something tucked.  So, then when I axed (sic) him that he like, he hope his tuck spot is cool and after a few seconds later, that's when the Trooper had something in his hand he said he found it and he's , and all of a sudden he shut down and he said 'I'm not saying nothing' and he put his head down.  When he put

his head down, that's when the State Trooper came to us and opened up the car doors and he separated all of us.

{¶13} "I was in the first car, he was in the second and Bobbi I guess was in the last car and he came to the car and axed (sic) did I know anything about this? I told him 'no.' He closed my door. You know, I turned around cause I was in cuffs, I could see he went to the cars and he come back. He came back to my car and opened my car door and he axed (sic) me, he said 'where's the Marijuana?' And I told him, 'what Marijuana?' The other State Trooper came and walked up and said 'cut it out' 'cut the bs out, Corey said you have Marijuana in your drawers, stuffed your butt, get it out of there before we charge you with something else.' I gave it up and he said, he also said, 'the pills are yours.' I told him 'no, those are not mine' and he closed the door." Transcript at 116-117.

{¶14} On cross-examination, Frais testified that, during the ride, appellant never got into the driver's seat and never got into the front passenger seat. He testified that he never saw appellant with pills on the day in question and that appellant never told him that he had a bag of pills. Frais admitted that, in his statement to police, he never mentioned appellant talking about his "tuck spot." He also admitted that when he was stopped by the Trooper, he did not tell the Trooper right away that he had marijuana in his possession. At the time, Frais had $729.00 in cash on his person and had told the Trooper that he did not have a job. He testified that he told the Trooper that women gave him money. Frais, with respect to the facts of this case, was charged with aggravated possession of drugs, a felony of the second degree, but he testified that, in exchange for his testimony, was facing a felony of the fifth degree and faced a possible

sentence of six to twelve months rather than two to eight years. Frais testified that he was hoping to get probation. He admitted that he had violated his probation in the past and had gone to prison. Frais further admitted that he was upset after appellant told the Trooper that Frais had marijuana stuck down his pants and was angry that appellant had snitched on him.

{¶15} Jeffrey Turnau, a lab technician from the State Highway Patrol's crime lab, testified that he tested the pills that were submitted by Trooper Beach and that there were 475 light blue, 30 milligram tablets of Oxycodone, a schedule II controlled substance. He also testified that there were a number of brand names associated with Oxycodone, including Roxycodone, and that another brand name was Percocet. Turnau further testified that the maximum daily dosage of Oxycodone is 90 milligrams and that the bulk amount is five times the maximum daily dosage, or 15 tablets in this case.

{¶16} The last witness to testify at trial was Trooper Roy Beach, who is with the Ohio State Highway Patrol. Trooper Beach testified that he was working the midnight shift on Interstate 77 near Dover on March 9, 2011, when he stopped the vehicle appellant was in for speeding at or about 12:03 a.m. At the time, appellant was in the back passenger seat while Frais was in the front passenger seat. The vehicle was traveling 77 miles per hour in a 65 mile per hour zone. When he approached the vehicle, the Trooper noticed an odor of raw marijuana coming from the same. Trooper Beach then called for back-up assistance. When back-up assistance arrived, he had all three people exit the vehicle and searched them. All three were placed in separate vehicles. During a search of the stopped vehicle, Trooper Beach located a large baggie

containing pills. The following testimony was adduced when he was asked how he identified or found the pills:

{¶17} "TROOPER BEACH: Um, while searching the vehicle, on the passenger side, at the right front door of the vehicle, I got down on my knees and I shined my flashlight along the floorboard and the underneath, the underpart of the dash compartment, the glove box and up underneath there's a plastic, two pieces of plastic come together and again, this was a brand new rental car, I believe a 2011 Hyundai if I'm not mistak(sic)-brand new, very excellent condition.  But where the two plastic pieces came together, there was one tab that was popped out which obviously, to me, I felt that maybe it had been tampered with.  Normally from a factory, a car dealer's gonna put it together and make sure everything's squared away, looking nice and neat, especially the interior.  Um, when I noticed the tab, um and-and the plastic just slightly offset, I reached my and up um, up in I guess behind-my hand went behind the plastic and I felt a bag of-of something at the time.  I pulled it out and that was the bag of pills." Transcript at 170-171.

{¶18} He testified that eight smaller bags of pills were contained in one big bag.

{¶19} During questioning the occupants of the car, it was brought to Trooper Beach's attention that Frais had marijuana. While Frais was being patted down, he never mentioned the marijuana inside of his pants.  The Trooper then went back to speak with Frais again and Frais admitted that he had marijuana and pulled a small baggie out of his pants. A pack of rolling papers was found in his wallet.

{¶20} Trooper Beach read appellant's handwritten statement to police into the record.  Appellant, in his statement which was admitted as Exhibit C, stated as follows:

{¶21} "I, Corey Greene was asked to ride with Dal Frais to drop his girlfriend off in South Carolina.  I told him I would, and he told me he was gonna look out (give me money) for me cus (sic) I would go.  He told me we had to make a stop in West Virginia cause that was on the way there.  He didn't show me, but he told me he had some pills to drop off and after he did that, we could go to South Carolina and party.  They came and got me from my house on Garden Ridge cause I had to leave my car with my girl.  So they came got me about 9 something off of Garden Ridge.  We went to a gas station on Renolds Rd. got chips, pop, gas and a fuse for the lighter then we got on 80/90 turn – pike.  After that I feel (sic) a sleep in the back seat and woke up to gettin (sic) pulled over by the State Troopers.  And while we were pulled over Mr. Frais kept trying to reach down by his feet and move those pills.  I asked him why he was moving and that's when he told me he was trying to tuck his pills better.  So I guess the officer smelled marijuana which sent a red flag up so he reached the car and found pills & weed.  Theres (sic) nothing in that car thats (sic) mines (sic) but whats (sic) in the back seat!  I'm willing to testify those were his pills."

{¶22} On cross-examination, Trooper Beach testified that if Frais had told him that appellant had said "I hope that my tuck spot is good," it would have been in his written report.  There was no such statement in his written report. He further testified that appellant had told a Deputy that Frais had marijuana in his pants and that Frais got very upset with appellant because he had been "ratted out." Transcript at 198.  Trooper Beach also testified that he never saw appellant with any pills on his person or in his clothing or possessions. According to Trooper Beach, he never saw appellant leave the back seat or make any movements towards the front of the car or the front dash.  He

testified that Frais was seated closest to the drugs and, from his seat, could have reached in and accessed the pills. The Trooper also testified that, contrary to Frais' testimony, appellant and Frais were never in the same cruiser together.

{¶23} At the conclusion of the evidence and the end of deliberations, the jury, on February 8, 2012, found appellant guilty of aggravated possession of drugs, a felony of the second degree. Pursuant to a Judgment Entry filed on February 8, 2012, appellant was sentenced to five years in prison and ordered to pay a fine in the amount of $7,500.00. However, the fine was suspended due to appellant's indigency. In addition, appellant's license was suspended for a period of five years.

{¶24} Appellant now raises the following assignments of error on appeal:

{¶25} "I. THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION WHEN IT ALLOWED EVIDENCE OF ALLEGED SIMILAR ACTS TO BE PRESENTED TO THE JURY IN VIOLATION OF EVIDENCE RULE 404.

{¶26} "II. THE EVIDENCE IS INSUFFICIENT TO FIND THE APPELLANT GUILTY OF AGGRAVATED POSSESSION OF DRUGS AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

I

{¶27} Appellant, in his first assignment of error, argues that the trial court abused its discretion in allowing "other acts" evidence under Evid.R. 404(B).

{¶28} Initially, we note the admission or exclusion of relevant evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). The trial court's admission of other acts evidence is reviewed under an abuse of discretion standard. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407,

972 N.E.2d 528. In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶29}** As a general rule, evidence of previous or subsequent acts, wholly independent of the charges for which the accused is on trial, is inadmissible. *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969). Such evidence cannot be admitted for the purpose of establishing the defendant acted in conformity with this bad behavior. *State v. Elliot*, 91 Ohio App.3d 763, 633 N.E.2d 1144 (3rd Dist. 1993).

**{¶30}** Evid. R. 404(B) reads, in relevant part, as follows:

**{¶31}** "(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶32}** R.C. 2945.59 provides:

**{¶33}** "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶34} Other acts evidence demonstrating a modus operandi, scheme, plan or system evincing a "behavioral fingerprint" is limited to the purpose of establishing the perpetrator's identity. See, *State v. Jamison*, 49 Ohio St.3d 182, 183, 552 N.E.2d 180 (1990); *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190; *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).  As noted by the Court in *Jamison*, the other acts must form "a unique, identifiable plan of criminal activity, sufficiently probative as to identify to warrant their admission."  Id. at 183.

{¶35} It must be remembered "because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988); paragraph one of the syllabus.[1] As cautioned by the Ohio Supreme Court in *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), "... we therefore must be careful.. to recognize the distinction between evidence which shows that a defendant is the type of person who might commit a particular crime and evidence which shows that a defendant is the person who committed a particular crime." *Id.* at 530.  Evidence to prove the 'type' of person the defendant is to show he acted in conformity therewith is barred by Evid.R. 404(B).

{¶36} In the case sub judice, appellant specifically takes issue with the other acts evidence offered by appellee, over objection, through the testimony of Dal Frais. As is stated above, Frais, over objection, testified that appellant indicated that he

---

[1] The Ohio Supreme Court found Evid. R. 404(B) controls over R.C. 2945.49 since it was adopted subsequent to the statute in *Jamison,* supra, at 185.

wanted to be dropped off in West Virginia. Frais further testified that he knew that appellant made frequent trips to West Virginia and that appellant, after such trips, bragged about the amount of money that he made. Frais also testified that appellant had shown him blue Percocet pills while they were hanging out in Toledo and indicated that he made money selling the same. After Frais' testimony, the trial court gave a limiting instruction stating that "the evidence of a prior criminal act may not be considered as a basis for an inference that the Defendant acted in conformity with that prior conduct on the date in question for the case presented today. It may be considered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Transcript at 137. Appellant now contends that the trial court abused its discretion in admitting such "other acts" evidence.

{¶37} In turn, appellee argues that such testimony was properly admitted into evidence in order to show appellant's *modus operandi* for the purpose of establishing that the pills belonged to appellant. As is stated above, other acts may prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged.

{¶38} We find that the trial court abused its discretion in admitting Dal Frais' testimony because the acts testified to by Dal Frais do not establish a common scheme or plan. Dal Frais' testimony does not establish a "behavioral footprint." There is nothing particularly unique and identifiable about selling blue Percocet pills in West Virginia. As noted by appellant, there was no testimony that appellant used a rental car to transport drugs, that he put the drugs underneath the dash of the passenger seat or

that he took the particular route from Toledo to West Virginia on a regular basis. We concur with appellant that "just sitting there saying well I know he goes down there a lot and I know he takes pill,….that's not specific enough,…" Transcript at 99.

**{¶39}** Moreover, based on the lack of overwhelming evidence of appellant's guilt, we cannot say that that appellant was not prejudiced by the admission of the other acts evidence. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle,* 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). An appellate court may overlook an error where the other admissible evidence, standing alone, constitutes "overwhelming" proof of guilt. *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown,* 65 Ohio St.3d 483, 485, 1992–Ohio–61, 605 N.E.2d 46.

**{¶40}** As is stated above, there was testimony at trial that both marijuana and money were found on Frais, who has prior convictions, while nothing was found on appellant. The pills were located in an area in front of where Frais was seated while, during the trip, appellant was seated in the back seat of the vehicle. Frais' testimony about appellant's alleged trips to West Virginia clearly was prejudicial to appellant since it tied appellant to the pills. We find that there was a reasonable possibility that such testimony contributed to appellant's conviction and such error was not harmless beyond a reasonable doubt. In short, we find that the probative value of such "other acts"

evidence was outweighed by the prejudice and that the trial court abused its discretion in admitting such testimony.

{¶41} Appellant's first assignment of error is, therefore, sustained.

II

{¶42} Appellant, in his second assignment of error, argues that his conviction for aggravated possession of drugs is against the sufficiency and manifest weight of the evidence. Based on our disposition of appellant's first assignment of error, we find the portion of this assignment of error challenging the manifest weight of the evidence to be premature.

{¶43} In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., *State v. Carter,* 72 Ohio St.3d 545, 553, 1995–Ohio–104, 651 N.E.2d 965; *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶44} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *Jenks,* supra. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶45} Appellant was convicted of aggravated possession of drugs in violation of R.C. R.C. 2925.11(A) and (C)(1)(c). R.C. 2925.11 states, in relevant part, as follows: "(A) No person shall knowingly obtain, possess, or use a controlled substance." The

culpable mental state of "knowingly" is defined as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶46}** R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶47}** Possession may be actual or constructive. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982); syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly,* 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242 (8th Dist. 1993); *State v. Morales,* 5th Dist. No. 2004 CA 68, 2005-Ohio-4714, ¶ 50; *State v. Moses,* 5th Dist. No. 2003CA00384, 2004-Ohio-4943, ¶ 9. Ownership of the drugs need

not be established for constructive possession. *State v. Smith,* 9th Dist. No. 20885, 2002-Ohio-3034, ¶ 13, citing *State v. Mann,* 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332.

{¶48} Appellant, in support of his argument, notes that he was not present when the vehicle in question was rented, and that he was patted down without any illegal substance or money found on his person whereas marijuana and money were found on Frais. He further notes that while Frais testified that he and appellant were put in the same cruiser and that, while in the back of the cruiser, appellant mumbled to him that he hoped his "tuck spot" was good, Trooper Beach testified that they were never placed in the same cruiser. Appellant also contends that he did not have actual or constructive possession of the drugs found in the car. He notes that the drugs were found under the dashboard in front of Frais and not in the area of control of appellant. Moreover, appellant emphasizes that while he immediately told Trooper Beach about the marijuana on Frais' person, Frais never mentioned the marijuana.

{¶49} However, we find that any rational trier of fact could have found that appellant committed the offense of aggravated possession of drugs and that there was sufficient evidence to support his conviction. Based on the testimony of Frais adduced at trial, even excluding the testimony that we held was improperly admitted, the jury could have found that appellant had access to the area under the dash on at least two occasions, asked to be dropped off in West Virginia to meet a friend and said, while the trooper was searching the car, that he hoped his "tuck spot" was good.

{¶50} Based upon the above evidence, we find that appellant's conviction was not based upon insufficient evidence.

{¶51} Appellant's second assignment of error is, therefore, overruled.

{¶52} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is reversed and this matter is remanded for retrial.

By: Edwards, J.

Farmer, J. concurs and

Hoffman, P.J. concurs separately

_____

_____

_____

JUDGES

JAE/d0828

*Hoffman, P.J., concurring*

{¶53} I concur in the majority's analysis and disposition of Appellant's first assignment of error. I write separately with respect thereto to state, even if the evidence had been sufficient to establish a common scheme or plan; i.e., a *modus operandi* sufficient to establish a behavioral fingerprint as argued by the state of Ohio, such evidence would still be inadmissible because the identity of the Appellant was not at issue.

{¶54} I further concur in the majority's analysis and disposition of Appellant's second assignment of error.

_____
HON. WILLIAM B. HOFFMAN

[Cite as *State v. Greene*, 2012-Ohio-5624.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| COREY GREENE | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012 AP 02 0018 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is reversed and this matter is remanded to the trial court for retrial.  Costs assessed to appellee.

_____

_____

_____

JUDGES