[Cite as *State v. Ellis*, 2020-Ohio-3910.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020CA00004 |
| ANTHONY P. ELLIS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Fairfield County
Municipal Court, Case No. TRC1902700

JUDGMENT:     Affirmed in part; Reversed in part

DATE OF JUDGMENT ENTRY:     July 30, 2020

APPEARANCES:

For Plaintiff-Appellee

RANDALL T/ ULLOM
Lancaster Law director
By: JOSEPH SABO
Assistant Law Director
59 N. Main Street
London, OH 43140

For Defendant-Appellant

JONATHAN T/ TYACK
MADISON MACKAY
536 S. High Street
Columbus, OH 43215

*Gwin, P.J.*

**{¶1}** Defendant-appellant Anthony Ellis ["Ellis"] appeals the October 9, 2019 judgment entry of the Fairfield Municipal Court overruling his motion to suppress.

*Facts and Procedural History*

**{¶2}** On March 30, 2019 at approximately 2:00 a.m., Fairfield County Deputy Sheriff Justin Mann was driving north on Center Street in Pickerington, Fairfield County, Ohio. He was in uniform, driving a marked sheriff's cruiser. Deputy Mann noticed an SUV go left of center in front of his vehicle. In between the deputy's vehicle and the SUV was a silver sedan that appeared to be following the SUV.

**{¶3}** The SUV stopped in the middle of the roadway at East Street and North Center Street and remain stopped for approximately 4-5 seconds before making a right hand turn onto East Street. ST. at 10.[1] The silver sedan continued to follow the SUV. Deputy Mann followed the two vehicles onto East Street. The SUV tuned right onto Columbus Street, aka State Route 256 and crossed over the center line for the second time. ST. at 11. At the intersection of East Street and Columbus Street the SUV and the silver sedan turned right back onto Columbus Street where Deputy Mann observed another marked lane violation. ST. at 11. At the intersection of Columbus Street and Hill Road North, the SUV and the silver sedan turned into the parking lot of the Circle K on the southwest side of the intersection. ST. at 11. Both the SUV and the silver sedan turned into the rear entrance. Deputy Mann turned into the first entrance and came nose to nose with the SUV. ST. at 12. The silver sedan turned into a parking spot in the rear of the building approximately 50 feet away. ST. at 13. Deputy Mann activated his overhead

---

[1] For clarity, the transcript of the October 8, 2019 hearing on Ellis' motion to suppress will be referred to as "ST."

lights to effectuate a traffic stop of the SUV. ST. at 12. Deputy Mann contacted dispatch and began to speak when he saw the driver side door of the SUV open and the driver, later identified as Ellis, began to exit the SUV. ST. at 13.  Deputy Mann pulled his service weapon and ordered Ellis to get back inside the SUV.  ST. at 13.  Deputy Mann testified that he did not know if Ellis was going to run or to confront him and he drew his weapon to protect himself. ST. at 14.  Ellis complied with Deputy Mann's directives, got back inside the SUV, closed the door and rolled down the window.  ST. at 15-16.  Deputy Mann called for back-up because the SUV and the silver sedan were both in the parking lot.

{¶4}  Deputy Mann holstered his weapon and approached the driver's side window of the SUV.  Deputy Mann advised Ellis of the reason for the stop and asked Ellis where he had been and where he was going.  ST. at 15.  Deputy Mann immediately noticed an "obvious and strong odor of an alcoholic beverage emitting from the vehicle." ST. at 16. The deputy also noted, glassy, bloodshot eyes and slurred or thick tongue speech.  ST. at 16-17.

{¶5}  Ellis told the deputy that he was coming from a friend's house.  Ellis denied that he had been drinking when asked by Deputy Mann. ST. at 17. Deputy Mann left the SUV and went to speak with the driver of the silver sedan.

{¶6}  The sole occupant of the silver sedan was a female who told the deputy that she had met Ellis at a bar and was following him home to make sure that Ellis got home safely. ST. at 18.  She told the deputy that she arrived at the bar after Ellis. ST. at 19. She further reported witnessing Ellis consume three beers; however she agreed that Ellis had "significantly more." ST. at 19.  Deputy Dunlap arrived on the scene and took over the handling of the female from Deputy Mann. ST. at 19.

{¶7}  Deputy Mann returned to the SUV and asked Ellis to step out of the vehicle to perform the Standardized Filed Sobriety tests ["FST's"].  ST. at 19-20.  As Ellis attempted to exit the SUV, he had to use the driver's door to steady himself as it appeared he was having balancing issues.  ST. at 20.  As Deputy Mann began to perform the Horizontal Gaze Nystagmus test ["HGN"] Ellis told Deputy Mann that he was not going to take any of the FST's. ST. at 20-21.  Deputy Mann asked Ellis five to six times.  Ellis refused each time.  ST. at 21.  Deputy Mann then advised Ellis that he was under arrest for OVI.  ST. at 21.  Ellis was handcuffed and read his *Miranda* rights and put in the backseat of the cruiser. ST. at 21.  The parties stipulated that Deputy Mann and assisting Deputy Dunlap performed a pre-tow inventory search of Ellis's vehicle and located two empty beer cans and an empty mason jar that smelled of raw marijuana. ST. at 34.

{¶8}  Ellis was charged with OVI, in violation of R.C. 4511.19(A)(1)(a), Stopping or Slow speed, in violation of RC. 4511.22, and Driving in Marked lanes, in violation of R.C. 4511.33.

{¶9}  Ellis filed a Motion to Suppress on June 7, 2019 and the matter was heard by the trial court on October 8, 2019.  The trial court determined that Ellis was not arrested and Mann's use of force was reasonable given the circumstances that existed during the stop.

{¶10}  On December 19, 2019, Ellis pled no contest to OVI and the trial court found him guilty of OVI. The remaining two charges were dismissed. The trial court sentenced Ellis to pay a fine of $375, a one-year driver's license suspension, two years of community control, and 120 days in jail, 117 of those days suspended pending credit for three days in a driver's intervention program.

*Assignments of Error*

{¶11} Ellis raises two Assignments of Error,

{¶12} "I. THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY WHICH REFLECTS MR. ELLIS PLEAD GUILTY TO OVI, WHEN THE RECORD SHOULD ACCURATELY REFLECT THAT HE PLEAD NO CONTEST AND WAS FOUND GUILTY BY THE TRIAL COURT.

{¶13} "II. THE TRIAL COURT ERRED WHEN IT DENIED MR. ELLIS' MOTION TO SUPPRESS, AS MR. ELLIS WAS ARRESTED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."

I.

{¶14} The state concedes that the trial court's Final Judgement Entry contains a clerical error. Specifically, the Final Judgment Entry indicates that Ellis pleaded "Guilty" instead of ""No Contest" during his plea colloquy.

{¶15} On December 19, 2019, Ellis entered a plea of "No Contest" to OVI, a violation of R.C. 4511.19(A)(1)(a). *Change of Plea and Sentencing Transcript,* at 4-5. The trial court subsequently found Ellis guilty of the offense. *Id.* However, the Final Judgment Entry filed by the trial court mistakenly indicated that Ellis entered a plea of "Guilty."

{¶16} Accordingly, Ellis' First Assignment of Error is sustained. Therefore, this matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to correct the erroneous final judgment entry.

## II.

{¶17} In his Second Assignment of Error, Ellis argues the trial court erred in overruling his motion to suppress. Specifically, Ellis contends that Deputy Mann unlawfully arrested Ellis in violation of his constitutional rights when Deputy Mann drew his service revolver and ordered Ellis to get back into the SUV.

**2.1 Standard of Appellate Review.**

{¶18} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); Ornelas *v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra*.

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**2.2. Issue for Appellate Review:** *Did Deputy Mann have a reasonable articulable suspicion sufficient to warrant him in stopping the SUV that Ellis was driving?*

{¶19} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

{¶20} The Supreme Court of Ohio has observed, "'[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.' " *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 13, *quoting Gaddis ex rel. Gaddis v. Redford Twp.*, 188 F.Supp.2d 762, 767(E.D.Mich.2002). There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it. In *State v. Moller*, the Court of Appeals observed,

First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the

centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry*" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880 [20 L.Ed.2d 889]. A non-investigatory traffic stop must be supported by probable cause, which arises when the stopping officer witnesses the traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 [135 L.Ed.2d 89]; Pennsylvania *v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332 [54 L.Ed.2d 331]. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity.  *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287 (Oct. 23, 2000); *Accord, State v. Baughman,* 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶ 14; *State v. Nwachukwa,* 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 24; ¶ 26; *State v. Woods,* 5th Dist. Licking No. 18-CA-13, 2018-Ohio-3379, 117 N.E. 3d 1017, ¶14.

{¶21}   The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]"  *Dayton v. Erickson,* 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had

committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

{¶22}  In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays*, the Ohio Supreme Court made the following observation as it pertains to Ohio law,

Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665

N.E.2d 1091 (1996)], and in *Whren v. United States* (1996), 517 U.S. 806,

116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly

a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion.  *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a *reasonable and articulable suspicion, which is all the officer needs to justify* a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. (Emphasis added). The Ohio Supreme Court concluded,

> Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a *reasonable and articulable* suspicion considering all the circumstances, then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added). *See, State v. Marcum*, 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293.

{¶23} In the case at bar, Ellis concedes that his actions in stopping in the roadway and failing to drive in marked lanes provided sufficient justification for Deputy Mann to effectuate a traffic stop. [Appellant's brief at 4].

**2.3. Issue for Appellate Review:** *Whether Ellis was lawfully detained for traffic violations.*

{¶24} In the case at bar, Deputy Mann testified that he followed the SUV and the silver sedan into the Circle K parking lot to effectuate a traffic stop of the SUV after having

witnessed numerous traffic violations.  He parked his cruiser directly facing the SUV and activated his overhead lights.  ST. at 12-13. Ellis concedes that the traffic stop was proper. [Appellant's brief at 4].

{¶25}  The Ohio Supreme Court has held,

"[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, *citing Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation."  *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], *citing State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E .2d 1282, ¶ 12.

{¶26}  In the case at bar Ellis was not free to leave even if Deputy Mann had not drawn his service revolver and ordered Ellis to get back inside the SUV. Deputy Mann could lawfully detain Ellis until Deputy Mann finished his investigation and issued Ellis the

traffic citations.  As the Ohio Supreme Court has recognized in the context of questioning a suspect in the front seat of a police car,

> Oles contends that his belief that he was not free to leave should be dispositive. The court of appeals also articulated the test this way, finding that a reasonable person would not have felt free to leave. *But the relevant inquiry is whether a reasonable person in the suspect's position would have understood himself or herself to be in custody.* This nuance is important and well-reasoned. *If the inquiry were whether the driver felt free to leave, then every traffic stop could be considered a custodial interrogation because "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so," Berkemer,* 468 U.S. at 436, 104 S.Ct. 3138, 82 L.Ed.2d 317. And a law-enforcement officer, in the midst of investigating a traffic stop and performing all its attendant procedures, would not consider a driver free to leave unless given permission. *But "not free to leave" and "in custody" are distinct concepts.*

*City of Cleveland v. Oles,* 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.2d 810, ¶30.  In this case although Ellis was not "free to leave", he was not "in custody."

{¶27}  Factors that indicate a reasonable person would not have felt that he or she was in "custody" are the fact that Deputy Mann did not order Ellis out of his vehicle. Ellis was not ordered to his knees or face down on the ground, not patted down, searched or handcuffed. Deputy Mann ordered Ellis to *get back into his own car*, and Ellis was permitted to retain his car keys. *See, Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶17-20. Deputy Mann holstered his weapon before approaching the SUV to speak

with Ellis. Further Deputy Mann left Ellis alone in the SUV while he spoke with the driver of the silver sedan.  After holstering his weapon and approaching the car, the encounter proceeded as a routine traffic stop.

{¶28}   Deputy Mann, who was alone, encountered an SUV that was being followed by another vehicle. Both vehicles pulled into a parking lot.  The second vehicle parked a distance away from the SUV.  As Deputy Mann was reporting to dispatch, he observed the door to the SUV open and the driver begin to exit. We are unwilling to say that under these circumstances Deputy Mann was unwarranted in his limited use of force to protect his own safety and assess the danger.  Deputy Mann acted reasonably after determining and assessing the danger to himself by holstering his weapon and approaching the SUV in a non-threating manner.  He conducted the remainder of the encounter just as he would any other traffic stop. The fact that Deputy Mann drew his service revolver for officer safety until he could ascertain the threat level that Ellis and the unknown person or person inside the silver sedan posed to him, does not transform an otherwise valid traffic stop based upon reasonable, articulable suspicion into an illegal arrest.

{¶29}   As the United States Supreme Court has noted,

And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings—A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams,* 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). *We are aware that not all these assaults occur when issuing*

*traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations.  United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops."  Id., at 234, n. 5, 94 S.Ct. at 476, n. 5*

*Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331(1977) (emphasis added).  While we agree that an officer may not routinely approach a vehicle that he or she has lawfully stopped for a traffic violation with his or her gun drawn, we find that, under the totality of the circumstances in this case, Deputy Mann's actions were reasonably related to protecting his personal safety.

A determination as to the reasonableness of a particular police procedure depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607, 614–615. Certainly, it is reasonable that the officer, who has a legitimate reason to so detain that person, is interested in guarding against an ambush from the rear. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement."  *Andrews, supra*, 57 Ohio St.3d at 88, 565 N.E.2d at 1273.

*State v. Evans,* 67 Ohio St.3d 405, 410, 1993-Ohio-186, 618 N.E.2d 162(1993).

**{¶30}** Accordingly based upon the totality of the circumstances, although he was not free to leave, Ellis was not "in custody" as Deputy Mann conducted his investigation for the purpose of issuing traffic citations to Ellis. Deputy Mann's limited and momentary display of force for the purpose of assessing the danger to his personal safety was reasonable under the totality of the circumstances.

**2.4. Issue for Appellate Review:** *Whether Deputy Mann had probable cause to arrest Ellis for OVI?*

**{¶31}** If a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997).

**{¶32}** In Ohio, it is well settled that, where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Wells*, 2nd Dist. Montgomery No. 20798, 2005-Ohio-5008; *State v. Cooper,* 2nd Dist. Clark No.2001-CA-86, 2002-Ohio-2778; *State v. Robinson*, 2nd Dist. Greene No.2001-CA-118, 2002-Ohio-2933; *State v. Mapes*, 6th Dist. Fulton No. F-04-031, 2005-Ohio-3359 (odor of alcohol, 'slurred speech' and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin*, 11th Dist. Lake No. 2005-L-073, 2006-Ohio-1450; *State v. Beeley,* 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶16, *New London v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611; *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶22.

{¶33} In the case at bar, Deputy Mann witnessed Ellis commit numerous traffic violations. Deputy Mann testified that when he approached the driver's side window of the SUV he immediately noticed an "obvious and strong odor of an alcoholic beverage emitting from the vehicle." ST. at 16. The deputy also noted, glassy, bloodshot eyes and slurred or thick tongue speech. ST. at 16-17. Ellis lied to Deputy about his whereabouts. Ellis told the deputy that he was coming from a friend's house. Ellis lied to the deputy about his consumption of alcohol. Ellis denied that he had been drinking when asked by Deputy Mann. ST. at 17. Deputy Mann then spoke to the driver of the silver sedan. The sole occupant of the silver sedan was a female who told the deputy that she had met Ellis at a bar and was following him home to make sure that Ellis got home safely. ST. at 18. She told the deputy that she arrived at the bar after Ellis. ST. at 19. She further reported witnessing Ellis consume three beers; however she agreed that Ellis had "significantly more." ST. at 19. Deputy Mann retuned to the SUV and asked Ellis to step out of the vehicle to perform the Standardized Filed Sobriety tests ["FST's"]. ST. at 19-20. As Ellis attempted to exit the SUV, he had to use the driver's door to steady himself as it appeared he was having balancing issues. ST. at 20. As Deputy Mann began to perform the Horizontal Gaze Nystagmus test ["HGN"] Ellis told Deputy Mann that he was not going to take any of the FST's. ST. at 20-21. Deputy Mann asked Ellis five to six times. Ellis refused each time. ST. at 21.

{¶34} On these facts Deputy Mann had probable cause to believe that Ellis was driving while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1))(a). Because Deputy Mann had probable cause to believe that Ellis was violating R.C. 4511.19(A)(1)(a), Ellis was not unreasonably or unlawfully seized or arrested.

{¶35}  Ellis' Second Assignment of Error is overruled.

{¶36}  The judgment of the Fairfield County, Ohio Municipal Court is affirmed, in part and reversed, in part and this matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to correct the erroneous final judgment entry to reflect that Ellis pled "No Contest."

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur