[Cite as *State v. Streeter*, 2026-Ohio-1668.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025CA00111 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2025CR0634 |
| PRINCE WINSLOW GUY STREETER, | Judgment:  Affirmed |
| Defendant - Appellant | Date of Judgment Entry: May 6, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** KYLE L. STONE, Stark County Prosecuting Attorney by VICKI L. DE SANTIS, Assistant Prosecuting Attorney, for Plaintiff-Appellee; BERNARD HUNT, for Defendant-Appellant.

*Montgomery, J.*

{¶1}   Defendant-Appellant, Prince Streeter ("Appellant"), appeals from the trial court's denial of his motion to suppress evidence and the resulting jury verdict finding Appellant guilty of possession of cocaine and trafficking in cocaine.  For the reasons below, we AFFIRM.

<u>**STATEMENT OF FACTS**</u>

{¶2}   On March 19, 2025, Detective Matthew Kruger, from the Special Investigation Unit at the Massillon Police Department, was conducting surveillance by himself in an unmarked cruiser at a known narcotics location.  At approximately 1:30 p.m., he observed Appellant riding a bicycle to the house and walking up to the front door,

although he did not witness Appellant go into the house. *Trial Tr.*, p. 140. Detective Kruger later observed Appellant get into the passenger side of a red-colored sedan, which he began to follow. After a short time, he witnessed the vehicle make a very wide improper turn that resulted in the vehilce going into oncoming traffic. *Trial Tr.*, p. 142. "This vehicle actually went into oncoming traffic, so making a very wide tum [sic]." *Id.*

{¶3} Detective Kruger was in plain clothes so he requested, via dispatch, that traffic officers conduct a traffic stop. Detective Kruger testified at the suppression hearing that because he witnessed the traffic violation, he followed the sedan and called for patrol officers in marked units to make a traffic stop. Detective Kruger also told dispatch he saw a vehicle leaving a known drug area. *Trial Tr.*, p. 108. Patrolman Nicholas Hillyer was the officer on duty who initially conducted the stop.

{¶4} Detective Kruger heard Officer Hillyer state that he was waiting to get probable cause over the radio, so Kruger told him probable cause existed because he saw an improper turn at 3rd and Arch. Thereafter, Officer Hillyer initiated a traffic stop. Officer Hillyer testified, "you can actually hear my dash cam, me calling out the traffic stop, turning on the lights, and then the vehicle pulls over near [a] playground." *Supp. Tr.*, p. 22. Officer Hillyer testified that he went to the passenger side of the vehicle and made contact with Appellant. *Id.*, pp. 16-17, 23. He did not observe any contraband or weapons in open view and Appellant was not under arrest at that time. However, Appellant "was a little combative at that point, trying to figure out what the reason they were stopped for, kept asking things like that." *Id.*, p. 18.

{¶5} Officers Hunter Anthony and Alyssa Richard were also on routine patrol when they heard the dispatch call from Detective Kruger requesting a traffic stop. They arrived on scene to assist Officer Hillyer. As Officer Hillyer ran the driver's license

information and began working on a traffic citation, Officers Anthony and Richard interviewed the occupants of the vehicle. *Trial Tr.*, p. 109. Officer Richard spoke with Appellant, while Officer Anthony spoke to the driver, Courtney Hill ("Hill"). *Trial Tr.*, p. 109. When Hillyer went back to his cruiser and began preparing a traffic citation, at some point, Appellant walked over to the cruiser and asked Hillyer "What does this have to do with me? Why am I still here?" *Supp. Tr.*, p. 19. Hillyer testified that he replied, "I said . . . 'You're under traffic stop detainment. You are not free to leave.'" *Id.*, pp. 19-20.

{¶6} Appellant was argumentative and talking over Hill, so Officer Anthony asked Hill to exit the vehicle, to separate Appellant and Hill. *Trial Tr.*, pp. 109-110. Hill gave Officer Anthony consent to search her vehicle. Officer Anthony stated that because the driver consented to a search of the vehicle, he went to the passenger side and asked Appellant to step out of the vehicle. *Supp. Tr.,* at p. 29. Anthony testified Appellant was noncompliant at first but did eventually comply. Officer Anthony testified:

Upon getting [Appellant] out, he did give me consent to search his person and his pockets to make sure he didn't have anything on him, which at that point in time in his front hoodie, coat zipper pocket, I felt a large object protruding from the front. [Appellant] at that time didn't revoke consent for me to search that. However, due to his argumentative and fidgety behavior, I kind of just wanted to kind of soothe him and not push the issue, so I had him go step in front of the cruiser of Officer Hillyer * * *.

*Supp. Tr.*, pp. 29-30.

{¶7} Officer Anthony stated there were no drugs or weapons in his actual pants pockets. Anthony stated the item he felt, "was in like a front hoodie zipper pocket. He was wearing like a zip-up hoodie that had like a front zipper, and the brick-like object was in

his front hoodie pocket." *Id.*, p. 30. Anthony testified Appellant told him the object was "his lunch." *Id.*

{¶8} A few minutes later, while Anthony and Richard were searching the vehicle, the Officers noticed Appellant had left the scene and was running down the street. Both officers yelled for Appellant to stop and then got into their cruiser, and activated the lights and siren to pursue Appellant as he ran into an alley. The cruiser's dash camera began recording as soon as their lights and siren were activated, and was admitted as State's Exhibit 2.2. Officer Anthony eventually apprehended Appellant, tackled him, and when Appellant rolled over onto his back, Officer Anthony noticed that the front pocket of his hoodie was turned inside out and was empty. *Trial Tr.*, pp. 117, 118. Officer Anthony's body camera footage was played at trial and admitted as State's Exhibit 2.1.[1]

{¶9} When asked what happened to the contents of his pocket, Appellant claimed it was his beanie and gloves, rather than his lunch as previously explained. *Trial Tr.*, p. 118. Officer Anthony testified that the object in Appellant's pocket did not feel like a beanie. *Id.* After the officers placed Appellant into the cruiser, additional officers arrived on scene and they canvassed the alley where Appellant was seen running. About 5-10 yards into the alley, Detective Franklin spotted a plastic bag, thrown over a fence, that contained a brick-like object. Detective Kruger recognized the white brick object as powder cocaine. *Id.*, p. 145. The bag and its contents were sent to the Stark County Crime Lab for testing. Alexis Kimble, with the Stark County Crime Lab, was qualified as an expert, performed the testing, and testified at trial. Kimble stated, "It was one Ziploc bag

---

[1] Detective Kruger went back to the house he was surveilling for narcotics but was notified by the officers on scene that they were going to conduct a vehicle search, so they called for a K-9 unit to assist. Before the K-9 unit arrived, officers notified Detective Kruger that Appellant was fleeing on foot, so he responded back to the scene to assist with the apprehension.

containing one tied plastic bag with one Ziploc bag with pressed white material and it was 249.2 grams of Cocaine Schedule II." *Id.*, pp. 158, 162. The approixmate value of the cocaine was $25,000.00.

## STATEMENT OF THE CASE

{¶10} Appellant was charged with Trafficking in Cocaine, a felony of the first degree, and Possession of Cocaine. He pled not guilty. On May 28, 2025, Appellant filed a motion to suppress, claiming "that there was not a traffic violation that required the issuance of a traffic citation * * *." On June 9, 2025, the trial court held a hearing on the motion, and on June 12, 2025, denied Appellant's motion. In its Judgement Entry denying Appellant's Motion, the Court stated: "The State contends that the traffic stop was justified because Detective Kruger actually witnessed (or had a reasonable basis to believe he had witnessed) the red sedan commit a marked lane violation. This Court finds his testimony credible, which legally authorizes Officer Hillyer to stop the vehicle." *Judgment Entry*, p. 2.

{¶11} Indeed, the trial court found that the unrefuted testimony of the three officers was credible. The trial court stated that based upon the totality of the circumstances, the impetus for the traffic stop was Detective Kruger's observation of an improper lane violation, which he then relayed to Officer Hillyer and that sharing of information legally authorized Officer Hillyer to stop the vehicle.

{¶12} On July 8, 2025, the State filed a superseding indictment, adding major drug offender ("MDO") specifications to each count. Appellant pled not guilty to the superseding indictment and filed a motion to dismiss on July 15, 2025, which was denied. On July 16, 2025, after a one-day trial, a jury found Appellant guilty on both counts as stated in the indictment. On August 6, 2025, the trial court sentenced Appellant to an

indefinite prison term of eleven (11) to sixteen and a half (16.5) years, and merged count two and the MDO specifications with count one for sentencing purposes. Appellant filed the instant appeal.

## ASSIGNMENTS OF ERROR

**{¶13}** "I.     THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS/MOTION TO DISMISS BECAUSE THE TRAFFIC STOP WAS UNREASONABLE UNDER THE FOURTH AMENDMENT."

**{¶14}** "II.     APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

**{¶15}** "III.   APPELLANT'S CONVICTION'S [SIC] WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS

### A.  Motion to Suppress

**{¶16}** Appellant's first assignment of error claims the trial court erred in denying his motion to suppress the cocaine evidence found during an unlawful traffic stop. We disagree.

### Standard of Review

**{¶17}** "Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact." *State v. Durosko*, 2020-Ohio-3133, ¶ 15, citing *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist. 1998). The trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *Durosko*, ¶ 15, citing *State v. Brooks*, 75 Ohio St.3d 148, 154 (1996). A reviewing court is bound to accept the trial court's findings of fact when supported by competent, credible evidence. *Durosko*, ¶ 15, citing *State v. Medcalf*, 111 Ohio App.3d 142, 145 (4th Dist. 1996). The appellate court must then independently

determine as a matter of law, whether the facts meet the applicable legal standard. *Durosko,* ¶ 15. Here, Appellant does not dispute the facts but argues that the officer's traffic citation, that ultimately led to the discovery of cocaine on Appellant's person, was simply a muse to conduct the stop.

### 1. *Fourth Amendment Searches and Seizures*

{¶18} The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). Generally, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* Not every contact between a police officer and citizen implicates the Fourth Amendment. *Id.* "Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Berry*, 2018-Ohio-4791, ¶ 91 (citations omitted).

{¶19} Ohio law recognizes different types of police-citizen encounters: consensual encounters, traffic stops, and formal arrests. *Terry v. Ohio,* 392 U.S. 1 (1968); *Berry*, ¶¶ 21-22, citing *State v. Taylor*, 106 Ohio App.3d 741, 747-49 (1995). Within traffic stops, the Fifth District recognizes two types, investigatory and non-investigatory. *State v. Chambers*, 2020-Ohio-1483, ¶ 23 (5th Dist.); *State v. Ellis*, 2020-Ohio-3910, ¶ 20 (5th Dist.). The lawfulness of each type is governed by a different constitutional standard. *Id.*; *State v. Ewing*, 2010-Ohio-1385, ¶ 15 (10th Dist.).

{¶20} Thus, to determine whether a traffic stop was lawful, we must determine the "impetus" behind the stop and then determine whether the stopping officer was required to have probable cause or reasonable and articulable suspicion. *See State v. Mays*, 2008-

Ohio-4539. Probable cause is a stricter standard than reasonable and articulable suspicion, meaning "[t]he former subsumes the latter." *Id.*, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993); *State v. Oliver*, 2023-Ohio-1550, ¶¶ 41-46 (10th Dist.).

### 2. *Investigative Traffic Stops – Reasonable and articulable suspicion*

**{¶21}** An officer may perform a brief investigative traffic stop when the officer has a "reasonable and articulable suspicion" that a crime has occurred, is occurring, or is imminent, including a minor traffic violation. *State v. Mays,* 2008-Ohio-4539, syllabus; *City of Bowling Green v. Godwin,* 2006-Ohio-3563, ¶ 15 (2006). The officer must have an objective basis for suspecting the individual has engaged or is engaging in criminal activity. *United States v. Cortez*, 449 U.S. 411 (1981); *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996) (reminding lower courts that whether a traffic stop violates the Fourth Amendment requires an objective assessment of the officer's actions based on circumstances known to the officer at the time). In essence, the officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Berry,* ¶ 25.

**{¶22}** Importantly, reasonable suspicion is based on the totality of circumstances "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Hairston,* 2019-Ohio-1622, ¶10, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-38 (1991). This allows officers to draw from their experience and specialized training to make inferences from the cumulative information available to them that may not alert an average, untrained person. *State v. Reece,* 2018-Ohio-150, ¶ 10 (5th Dist.), quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002), citing *Cortez*, at 417-418. And, although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to probable

cause for an arrest. *Arvizu,* at 273; *Hairston,* ¶ 10 (recognizing that "the reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest"); *State v. Babcock*, 2013-Ohio-2366 (6th Dist.) (stating that reasonable suspicion is a less demanding standard than probable cause).

### 3. Non-investigatory Traffic Stops - Probable Cause

{¶23} A vehicle may be stopped when an officer witnesses a violation of the traffic code and then stops a motorist to issue a citation for the violation. *Erickson*, at 11-12; *Chambers*, ¶ 23; *Ravenna v. Nethken*, 2002-Ohio-3129, ¶ 30 (11th Dist.); *Ewing*, ¶ 16. The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable." *Ellis*, ¶ 21. Probable cause is defined in terms of "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

{¶24} It is well settled that traffic stops based upon an officer's observation of a traffic violation are constitutionally permissible, and facts sufficient for an actual conviction on the underlying infraction is not required. *State v. Reedy,* 2012-Ohio-4899, ¶ 18 (5th Dist.) (stating that the issue we must resolve is whether a police officer may stop an individual when the officer reasonably but mistakenly believes the conduct is a violation of the traffic law), citing *Erickson, supra*, at 11-12; *State v. Kay,* 2022-ohio-3538, ¶ 17 (5th Dist.) ("Traffic stops based upon observation of a traffic violation are constitutionally permissible."); *Godwin,* ¶ 15; *State v. Garnett*, 2010-Ohio-5865, ¶ 13 (10th Dist.) (holding the officer reasonably but mistakenly believed he observed a traffic

violation when the appellant failed to use his turn signal); *State v. Gunzenhauser*, 2010 Ohio 761, ¶ 16 (5th Dist.). The validity of a non-investigatory traffic stop turns on whether an objectively reasonable police officer would believe a violation occurred based on the totality of the circumstances. *Columbus v. Gullick*, 2008-Ohio-3168, ¶ 12 (10th Dist.).

{¶25} In accordance with the above, "any traffic violation, even a de minimis violation, may form a sufficient basis upon which to stop a vehicle." *Kay,* ¶ 17. An officer's observation of a traffic violation gives the officer not only a reasonable and articulable suspicion to stop the vehicle, but also probable cause to make the stop. *Mays*, ¶¶ 23-24. This is true "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Erickson, supra,* at paragraph one of the syllabus; *see also State v. Hopkins,* 2021-ohio-2662, ¶ 31 (5th Dist.); *Mays,* syllabus (despite possible defenses, a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings, even without further evidence of unsafe driving)[2]; *Taylor*, at 749; *State v. Fips*, 2023-Ohio-2295, ¶ 15 (8th Dist.) (noting the officer's traffic stop was legal because the driver had one headlight out).

### 4. *Probable Cause Existed to Conduct the Traffic Stop*

{¶26} Here, Detective Kruger testified he witnessed the vehicle, wherein Appellant was a passenger, make a northbound turn onto a street and go directly into the oncoming

---

[2] In *Mays*, the officer pulled over an individual who left his lane of travel, a possible traffic violation under R.C. 4511.33. The Court noted that R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic. When an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33. *Mays*, at 409. That Appellant may have a possible defense was irrelevant to the analysis of whether an officer had a reasonable and articulable suspicion to initiate a traffic stop. *Id.*

lane of traffic. Because he witnessed the traffic violation, he followed the vehicle and called for patrol officers in the area to make a traffic stop. *Supp. Tr.*, pp. 9, 12. Detective Kruger described the vehicle, and that Courtney Hill was the owner. *Id.*, p. 12. Officer Hillyer, on traffic duty that day, began to follow the sedan. Detective Kruger heard Officer Hillyer state that he was waiting to get probable cause over the radio, so Detective Kruger told him "he already had probable cause: that he saw an improper turn at 3rd and Arch." *Id.*, p. 17. Officer Hillyer proceeded to make the stop.

**{¶27}** Appellant claims the stop was unlawful because the officers who conducted it did not observe the traffic violation. However, "[u]nder the collective knowledge doctrine, 'knowledge of law enforcement officers is imputed to other officers.'" *State v. Hayes,* 2025-ohio-2238, ¶ 52 (10th Dist.). The collective knowledge doctrine permits police officers to rely on information provided by other officers to establish probable cause or reasonable suspicion when there is reliable communication between the officer supplying the information and the officer acting on that information. *State v. Hammer*, 2023-Ohio-1307 (2d Dist.), *see also State v. Muldrow,* 2016-ohio-4774, ¶ 18 (10th Dist.) (holding that information communicated to a trooper by a task force following a vehicle, creates reasonable suspicion and justification to effectuate a *Terry* stop); *Hayes*, at ¶ 45; *State v. Johnson*, 2017-Ohio-5527, 92 N.E.3d 1256 (10th Dist.) (undercover officer personally observed traffic violation and communicated information to patrol officer); *State v. Brown,* 2007-ohio-464, ¶ 34 (11th Dist.) ("it is the collective knowledge of the law-enforcement officers that allows the arresting officer to rely upon those facts to effect an arrest").

**{¶28}** As such, Appellant's argument is meritless. Detective Kruger personally witnessed the traffic violation and relayed that information to Officer Hillyer, therefore

Officer Hillyer had probable cause to effectuate a traffic stop. "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999). Officers Anthony and Richards arrived just after Officer Hillyer had conducted the traffic stop. Officer Anthony further confirmed that Detective Kruger requested officers to make the traffic stop, and had witnessed the vehicle make a traffic violation after leaving a known drug house area**.** *Supp. Tr.*, p. 26. The fact that Detective Kruger mentioned that the vehicle picked up Appellant near a known drug house does not make the stop unlawful. A traffic stop is reasonable when it is based on probable cause, "and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *State v. Johnson,* 2008-ohio-1169, ¶ 27 (5th Dist.).

**{¶29}** The trial court found Detective Kruger's testimony credible, and that it was Detective Kruger's knowledge as the requesting officer that determined if the stop was lawful. Thus, we conclude that probable cause existed to conduct the traffic stop. The trial court properly overruled Appellant's motion to suppress. **Appellant's first assignment of error is overruled**.

### B. *Sufficiency and Manifest Weight of the Evidence*

**{¶30}** In the second assignment of error, Appellant argues his convictions were not supported by legally sufficient evidence and Appellant's third assignment of error claims the convictions are against the manifest weight of the evidence. We disagree with Appellant and address these assignments of error together.

### 1. *Standard of Review*

**{¶31}** The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4; *State v. Worley,* 2021-Ohio-2207, ¶57. A sufficiency-of-the-evidence challenge asks whether the evidence is "legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 2011-Ohio-4215, ¶ 219.

**{¶32}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶ 83. When a court of appeals reverses a judgment of a trial court as against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins*, at 387; *Williams,* ¶ 60. The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.*, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *State v. Dotson*, 2017-Ohio-5565, ¶ 1 (5th Dist.).

**{¶33}** In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21; *In re Z.C.*, 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the

findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). In determining whether a witness is credible, the trier of fact is in the best position to consider inconsistencies in testimony, as well as the witnesses' demeanor and manner of testifying. *Dotson*, ¶ 50. A defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. *Id.*; *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist). If the evidence is susceptible to one or more interpretations, a reviewing court must interpret it in a manner consistent with the verdict. *Dotson*, ¶ 49.

{¶34} Circumstantial evidence has the same probative value as direct evidence, and a conviction can be sustained based on circumstantial evidence alone. *State v. Mahone*, 2014-Ohio-1251, ¶ 48 (10th Dist.). It is within the province of the jury to consider the probative value of the evidence, whether direct or circumstantial, and to draw reasonable inferences from the facts and testimony in evidence. *Id.*, ¶ 49.

{¶35} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary,* 2011-Ohio-3161, ¶ 11 (10th Dist.), citing *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.) (noting that "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency") (other citation omitted); *State v. Winbush,* 2017-Ohio-696, ¶ 58 (2d Dist.). As a result, a determination that a judgment is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra,* 2022-Ohio-1421, ¶ 50 (2d Dist.).

## 2. *Possession of Cocaine*

**{¶36}** Appellant was convicted of first-degree felony possession of cocaine in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.01(K) defines "[p]ossess or possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession can be actual or constructive. *State v. Greene,* 2012-Ohio-5624, ¶ 47 (5th Dist.), citing *State v. Hankerson,* 70 Ohio St.2d 87 (1982), at syllabus.[3]

**{¶37}** Appellant argues there were no fingerprints or DNA evidence to show he possessed the brick of cocaine. However, such evidence is not necessary to prove possession. *State v. Kelley*, 2008-ohio-6598, ¶ 62 (7th Dist.). "Although forensic evidence of the defendant's fingerprints or DNA on the bag would be direct evidence that the defendant touched the bag," the state can present other circumstantial evidence "sufficient for the jury to establish that [the defendant] possessed the cocaine." *State v. McClain,* 2020-Ohio-1436, ¶ 49 (3d Dist.) See *State v. Hastings*, 2003-Ohio-1251 (5th Dist.).

**{¶38}** Here, the evidence demonstrates that Appellant had actual and/or constructive possession of the cocaine brick. Appellant was first seen on his bike approaching a known drug house and was later picked up near the drug house by a female

---

[3] Constructive possession can be established where the evidence proves "the defendant was able to exercise dominion and control over the contraband." *Greene,* ¶ 47. "Dominion and control may be proven by circumstantial evidence alone." *Id.,* quoting *State v. Trembly,* 137 Ohio App.3d 134, 141 (8th Dist.). Here, even if Appellant did not have actual possession, the evidence supports that he had constructive possession.

driver. Once stopped, an officer conducted a pat down of Appellant and felt a "brick-like" object in Appellant's hoodie. Officer Anthony described it as a "big rectangular shape * * * I could feel plastic. Based on my training and experience of dealing with narcotics in my career, I could feel plastic. Not a hard, but like, kind of like a softer shape, a softer texture to it. Just a smaller brick-like object[.]" *Trial Tr.*, p. 114. Appellant told the officer it was his lunch.

{¶39} During the stop and while officers were distracted, Appellant took off and ran away from the officers into a nearby alley. Upon capture, Appellant no longer had the brick-like object in his hoodie, and his hoodie pocket was turned inside out. Once officers canvassed the area where Appellant ran, they found a brick of cocaine tossed over a fence that felt just like the object the officer felt in Appellant's hoodie. The brick of cocaine was valued at $25,000.00. The State's circumstantial evidence of actual possession is significant. Thus, the jury did not clearly lose its way in finding Appellant guilty of possession of cocaine and his conviction is not against the manifest weight of the evidence. Because it is not against the manifest weight, it is necessarily supported by legally sufficient evidence.

### 3. *Trafficking in Cocaine*

{¶40} Appellant was also convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2), which provides that "[n]o person shall knowingly do any of the following: (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Appellant argues that

the State presented no evidence that he trafficked in cocaine other than presenting the amount of cocaine. Again, Appellant's argument is without merit.

**{¶41}** The intent to distribute a controlled substance may be inferred from the possession of a large quantity of the substance. *See State v. Moon,* 2009-Ohio-4830 (4th Dist.) ("[i]ntent must often * * * be inferred from the act itself and the surrounding circumstances."); *State v. Johnson,* 2025-Ohio-1009, ¶ 42 (3d Dist.) (a jury may reasonably infer from the State's evidence that a large quantity of cocaine were intended for sale or distribution); *State v. Crowell,* 2020-Ohio-923, ¶ 10 (police officers often testify to the nature and amount of drugs as it relates to drug trafficking).

**{¶42}** Kruger explained that, "people generally buy anywhere from a gram to [what is] called a ball, which would be 3.5 grams. [That is] our typical user amount of drugs * * * what users are typically buying to then consume themselves, and then this came back as 249 grams of cocaine, so obviously much larger than what the typical user would purchase." *Trial Tr.*, p. 148. Here, the value was worth approximately $25,000.00. Kruger testified that users generally do not have such a large amount of cocaine on them, which "could clearly keep somebody under the influence of cocaine for a long amount of time." *Trial Tr.*, p. 150. Users typically have one to 3.5 grams, but "this is a significant amount cocaine, and it appeared at this house that we were already watching in reference to drug trafficking." *Trial Tr.*, pp. 150-151. Detective Kruger further testified that the packaging "is a telltale sign of trafficking in cocaine * * * this is not just a bag * * * it was pressed down for the actual transport" so people can abuse it. *Trial Tr.*, p. 147.

**{¶43}** The jury reached the only reasonable conclusion supported by the evidence, which resulted in finding Appellant guilty as to both counts. There was no conflicting evidence, and the jury determined that the State's witnesses were credible. It is within

the province of the jury to consider the probative value of the evidence, whether direct or circumstantial, and to draw reasonable inferences from the facts and testimony in evidence. *Mahone,* at ¶ 49. The jury did not clearly lose its way or create such a manifest miscarriage of justice that the convictions cannot stand. Because the conviction for trafficking is not against the manifest weight, it is necessarily supported by legally sufficient evidence. Accordingly, **Appellant's second and third assignments of error are overruled.**

## CONCLUSION

{¶44} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is Affirmed.

{¶45} Costs to Appellant.

By: Montgomery, J.

Hoffman, P.J. and

Popham, J. concur.